897 F.2d 529
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lauren BELL, Plaintiff-Appellant,
v.
KROGERS, INC., Defendant-Appellee.
 No. 89-3206.
 United States Court of Appeals, Sixth Circuit.
 March 6, 1990.
 
 Before BOYCE F. MARTIN, Jr. and WELLFORD, Circuit Judges, and, GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 The plaintiff, Lauren Bell, filed this race discrimination action, alleging that the defendant-appellee, the Kroger Company ("Kroger"),[1] violated 42 U.S.C. Sec. 1981 by transferring Bell from one Kroger store to another store and by failing to transfer Bell to a position as office worker from her cashier position. The complaint also alleged that the union which represented her violated its duty of fair representation under 29 U.S.C. Sec. 185. Subsequently, the local union moved for summary judgment, which the district court granted. The plaintiff has not appealed from this judgment.
 
 
 2
 Bell filed an amended complaint alleging eleven more claims against Kroger, including a Title VII claim. A bench trial was held, and after Bell had presented her evidence, Kroger moved under Federal Rule of Civil Procedure 41(b) to dismiss all of Bell's claims. The judge, in an oral opinion from the bench, held that the plaintiff had failed to prove discrimination on all but one claim, Bell's claim that Kroger had discriminatorily denied her a transfer from a position as cashier to an office worker position. Later, the trial court issued an opinion and order holding that Bell had failed to prove discrimination.
 
 
 3
 Although the plaintiff's amended complaint did not contain disparate impact allegations, the trial court evaluated the sole remaining denial of transfer claim under both disparate impact and disparate treatment theories. With regard to the disparate treatment theory, the trial court first found that a transfer from cashier to office worker constituted an employment opportunity within the meaning of Title VII. The trial court then found that Bell had established a prima facie case of discrimination. The trial court then found that Kroger had rebutted Bell's prima facie case by setting forth specific legitimate, nondiscriminatory reasons for denying the transfer and that Bell had failed to prove that Kroger's reasons were pretextual. As to disparate impact, the trial court found that although plaintiff had established a prima facie case, through the use of statistics, Kroger had met its burden of articulating a legitimate business justification for its selection procedures. Judge McQuade concluded that Bell had failed to come forward with lesser acceptable alternatives to Kroger's selection practices and therefore dismissed this claim.[2] The court also denied Bell's motion for reconsideration, and she now appeals to this court.
 
 
 4
 Bell worked during the pertinent period, and continues to work, at Kroger as a full-time cashier. She has a 1979 full-time seniority date. Seniority among the cashiers in a particular store is used in determining whether to grant requests for particular shifts, days off, and vacations. As determined by the district court, seniority is not a factor in determining whether to promote, or to transfer, an employee from one position to another or from one store to another.
 
 
 5
 A union represents all store employees except managers and supervisors. The front-end staff of Kroger stores is comprised of cashiers, baggers, and office workers; a front-end supervisor (also known as a customer services coordinator) supervises these employees. The duties of a cashier include working at the check-out line, ringing up customers' purchases, and handling payments. The duties of an office worker consists of cashing customer checks, opening and closing registers, balancing sales and cash reports, and sometimes directing the work of cashiers and baggers.
 
 
 6
 Bell's mother, a Kroger manager, was transferred to the Kroger Manhattan store in 1987 because this particular store had been having problems. Because of the transfer of Bell's mother to the Manhattan Store, in accord with Kroger's nepotism policy of prohibiting managers from supervising close relatives, Kroger contacted Bell about transferring to another store, the Miracle Mile store, located approximately the same distance from Bell's home as was the Manhattan store.
 
 
 7
 Before transferring, Bell visited the Miracle Mile store to investigate the type of schedule, vacation days, and other matters of concern. She met with unit manager Fuller and front-end supervisor Talks. Bell agreed to transfer and received a daytime schedule. She was told, however, that she would be allowed only a four-hour shift on Mondays and that her request for a vacation during the week between Christmas and New Years day could not be granted because of already-scheduled vacations during that week. Bell testified that she did not mind working during the week between Christmas and New Year's day and that instead she would take her vacation the second week of January. After discussing the transfer with her husband, she decided to transfer. She accepted the transfer to take better daytime hours so that she could spend more time with her young children.
 
 
 8
 Bell presented testimony to the effect that in isolated situations white employees worked with other relatives at the Miracle Mile store; this testimony, however, was contradicted by other testimony in the record.
 
 
 9
 Bell presented evidence which she claimed indicated that whites were treated better with regard to vacation requests by Kroger than were the black employees. She contended that in early 1988 she submitted a vacation request for the week before Christmas. Subsequently, Mr. Fuller imposed a ban on vacations for all store employees during this busy period.
 
 
 10
 Approximately three months after her transfer to the Miracle Mile store, Mr. Fuller began considering candidates for the position of office worker. Traditionally, while office workers were usually picked from the ranks of cashiers, seniority was not a factor in the determination of whether to transfer one from a cashier position to an office worker position. Compensation for an office worker was the same as for a cashier.
 
 
 11
 Mr. Fuller first picked Sharon Caro, a white cashier who had five years experience for the position of office worker. Caro declined the offer, and Mr. Fuller then chose Sandy Cole, also a white employee. Mr. Fuller and Ms. Talks testified that both Caro and Cole had the qualities necessary to become an office worker. They also testified that Ms. Bell was not chosen for a position as office worker because she did not have the same requisite qualities. In addition, they testified that she had refused to comply with a supervisor's directive, had made inappropriate comments in front of customers and others, had failed to follow store rules and procedures, and had conflicts with supervisors. Thus, despite previous office experience, Kroger managers felt that Bell was not as qualified to work in the front office.[3]
 
 
 12
 Kroger has a dress policy which prohibits employees from wearing jeans to work. In June 1988, one of the store supervisors noticed that Bell had come to work wearing jeans and asked her not to wear those jeans again. This manager testified that he often made similar requests to white employees who violated Kroger's dress code. Approximately one month later, Bell wore the same jeans, and she was sent home to change her clothing. Bell testified that there were numerous instances of dress code violations by white employees, but there was no evidence that these employees were not warned or asked to adhere to the policy. In fact, there was testimony that whenever any employee violated store policy, every effort was made to correct the problem. Kroger conceded that sometimes it was simply impossible to catch and discipline every employee guilty of a dress code violation.
 
 
 13
 Bell filed a charge of discrimination with the EEOC on January 15, 1988, alleging specifically that Kroger had discriminated against her in two ways: (1) by failing to introduce her to other store employees on her first day at work after her transfer to the Miracle Mile store, and (2) by denying her Christmas vacation request.
 
 
 14
 Count 1 of appellant's complaint alleged that Kroger discriminated against her on the basis of her race by requiring her to transfer to the Miracle Mile store. The district court dismissed this count under Fed.R.Civ.Proc. 41(b), finding that there was insufficient evidence to support a finding of liability. In plaintiff's brief, she simply concludes without discussion that she presented sufficient evidence to establish liability. This is clearly not enough to overcome the district court's dismissal of Count 1. One might, therefore, summarily affirm the trial court's finding of no liability on the part of Kroger, but we will, nevertheless, address Bell's contentions.
 
 
 15
 Bell claims that there was sufficient evidence to establish liability on the part of Kroger and that a directed verdict was improper. Kroger moved, however, under Rule 41(b) for an involuntary dismissal based on insufficiency of the evidence, not a Rule 50(a) motion for a directed verdict. In a bench trial,
 
 
 16
 [w]hen the defendant makes a Rule 41(b) motion to dismiss for insufficiency of the plaintiff's evidence it becomes the duty of the court to weigh and evaluate the evidence.
 
 
 17
 Weissinger v. United States, 423 F.2d 795, 798 (5th Cir.1970). Under Rule 41(b), the judge does not make any special inferences in the plaintiff's behalf, as is the case in a motion for a directed verdict. Emerson Electric Co. v. Farmer, 427 F.2d 1082, 1086 (5th Cir.1970). The reviewing court "may not disturb the lower court's conclusion unless clearly erroneous." Hersch v. United States, 719 F.2d 873, 877 (6th Cir.1983).
 
 
 18
 The district court found that Kroger's transfer policy was a reasonable policy and that in any event plaintiff voluntarily transferred from the Manhattan store to the Miracle Mile store. The defendant contends that Count 1 (and other counts as well) was properly dismissed by the court because this contention did not grow out of the charge filed by the plaintiff with the EEOC. It is well settled that "the scope of a judicial complaint is defined by the scope of the EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination'." Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir.1988) (citations omitted). See also Griffin v. Carlin, 755 F.2d 1516, 1522 (11th Cir.1985). The plaintiff's charge of discrimination alleged only the failure of the defendant to introduce her to other employees upon her transfer to the Miracle Mile store and the failure of Kroger to grant her 1987 vacation request. Under the authority of Baker, we affirm Count 1.
 
 
 19
 In its opinion, the district court analyzed plaintiff's Title VII claim under both disparate impact and disparate treatment theories. We find no error in the legal conclusion that there was no demonstrated intentional discrimination; thus, the disparate treatment claim must fail.
 
 
 20
 Under the disparate impact theory, a plaintiff must prove that a facially neutral employment practice treats one group more harshly than another group. "[A] Title VII plaintiff does not make out a case of disparate impact simply by showing that, 'at the bottom line', there is racial imbalance in the work force." Wards Cove Packing Co. v. Antonio, 109 S.Ct. 2115, 2124 (1989) (emphasis in original). The plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack. A defendant can succeed against a Title VII disparate impact challenge by showing that the business practice in question "serves, in a significant way, the legitimate employment goals of the employer." Id. at 2125-26. If the defendant is able to do this, the plaintiff must then prove that the justification was merely a pretext for discrimination and that there are alternatives which would "reduce the racially-disparate impact of practices currently being used...." Id. at 2126. Plaintiff has failed to show error in the district court's disparate impact analysis.
 
 
 21
 Bell contends that Count 2 of her complaint was improperly dismissed. She contends in this court that she was discriminated against because she was given only a four-hour shift on Monday instead of an eight-hour shift. The great weight of the evidence indicates that Bell voluntarily accepted the four-hour shift and completely understood the reasons for this assignment.[4]
 
 
 22
 The next counts of Bell's complaint alleged discriminatory treatment in the denial of her vacation requests in December 1987 and 1988. She claims that despite her seniority, whites were given vacations during the requested periods when she was not. The district court found that in regard to the December 1987 vacation, five or ten people had been granted vacations approximately ten months earlier and that there was simply no way in light of business necessity for Kroger to give her the requested vacation because they needed Bell's services. With regard to her vacation request for December of 1988, the plaintiff alleged two different discriminatory actions. First, she contended that she was discriminatorily denied time off for the weekend after Christmas. The record is clear, however, that she was, in fact, given this weekend following Christmas off. Second, the defendant asked for the week before Christmas of 1988 but was denied. The district court found that no one was given the week off before Christmas because of company policy, and there was no demonstrable discrimination. There was no error in awarding judgment to defendant on these claims. It is clear to us that plaintiff's allegations as to vacation schedules must fail for lack of proof.
 
 
 23
 The plaintiff's next argument is that the district court erred in not allowing her counsel to ask the following question of the plaintiff's mother, Mrs. Powell. "Once she [Bell] got over there did she make any statements to you about changing her job description or title, when she got to Miracle Mile?" The district court sustained the defendant's objection and ruled that the statement would elicit inadmissible hearsay. The plaintiff then argued that it was not offered for the truth of the matter asserted but was offered only to show that a statement was made and/or to show Bell's state of mind. We find this argument to be meritless also.
 
 
 24
 First, the statement was offered for the truth of the matter asserted. The plaintiff did not intend to offer the statement to show state of mind but rather it was offered to prove what the plaintiff said to her mother. Second, the issue is moot because the district court eventually allowed Mrs. Powell in substance to answer this question.
 
 
 25
 Count 7 alleged that Kroger discriminated against the plaintiff by not transferring her to an office position in January 1988. This is the only serious claim on appeal in our view. The district court held that Bell established a prima facie case of discrimination under the disparate impact theory. The court found "that the method of selecting cashiers for the front office results in a racial pattern significantly different from the general pool of applicants." Mem.Op. at 11. The statistical evidence showed that 8.7% of all the cashiers were black and that there were no black office workers. The court also found that the while the black population of Toledo was 16%, there were no black managers at the Miracle Mile Store and only 2 black managers out of a total of 38 Kroger managers in the Toledo area. The court thus concluded that the plaintiff had established a prima facie case of statistical discrimination. The Supreme Court's decision in Wards Cove Packing indicates that the district court erred in the use of this statistical evidence. The Court stated that the " 'proper comparison [is] between the racial composition of [the at-issue jobs] and the racial composition of the qualified ... population in the relevant market'." 109 S.Ct. at 2121. The district court here relied on the total population rather than the number of blacks qualified for the relevant position in Toledo, Ohio. However, in light of the ultimate disposition of this case, we need not further address this potential problem.
 
 
 26
 The court found that defendant had offered a business justification for the method of selecting office workers:
 
 
 27
 [F]ront office personnel work very closely together, and therefore they must be compatible in order to function smoothly as an efficient team. Front office workers are also given the responsibility of supervising the cashiers and baggers; therefore, front office workers must be capable of exercising authority and following company policies.
 
 
 28
 Mem.Op. at 14. Plaintiff's employment record demonstrated merit in defendant's justification for not transferring her to the position of front office worker despite her tenure with Kroger.
 
 
 29
 Assuming that the plaintiff in this case has established a prima facie case,[5] Kroger adequately has established that it rejected the plaintiff because of her problems as cashier in certain particulars. While it is true that the plaintiff has a generally satisfactory record as a cashier, she did not prove that she was rejected because of race.
 
 
 30
 We AFFIRM the trial court in all respects. We find no substance in the remaining contentions and conclude that the district court dealt adequately with all of plaintiff's assertions.
 
 
 31
 Edwards, concurring in part and dissenting in part. I see this as a very close case. I would affirm the District Court as to all counts except as to Count Seven. As to Count Seven, I would reverse the no discrimination finding and remand for a determination of damages.
 
 
 
 [1]
 Plaintiff refers to defendant in her brief and in the joint appendix as Krogers, Inc. There is no question as to the "real" defendant and we refer to it as "Kroger."
 
 
 [2]
 The trial court did not address her claim under Sec. 1981. That claim, however, is not cognizable under the recent Supreme Court decision in Patterson v. McLean Credit Union, 109 S.Ct. 2363 (1989)
 
 
 [3]
 Several white cashiers with greater seniority than Bell were not picked for the office position
 
 
 [4]
 The district court found that Bell agreed to the four-hour shift on Monday because fewer employees are needed and because there is not as much business on Mondays
 
 
 [5]
 The district court found that the plaintiff had established a prima facie case. While it is a close case, we disagree because the plaintiff failed to establish that she was as qualified for the position of office worker as the person chosen